IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| S.H.,[1] | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 4:26-CV-00470-BR |
| | § | |
| COMMISSIONER, SOCIAL SECURITY ADMINISTRATION, | § | |
| | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER OF SOCIAL SECURITY**

Pursuant to 42 U.S.C. § 405(g), Plaintiff seeks judicial review of a decision by the Commissioner of Social Security, who denied Plaintiff's application for disability insurance benefits under Title II[2] of the Social Security Act ("the Act"). (ECF 1). Plaintiff challenges the Commissioner's decision on one ground: that the Administrative Law Judge's ("ALJ") Residual Functional Capacity ("RFC") determination was not supported by substantial evidence. (ECF 12).

The Court finds that the ALJ's residual functional capacity finding is supported by substantial evidence, and the Commissioner's decision is accordingly AFFIRMED.

---

[1] It is the undersigned's practice to identify the plaintiff using only the first and last initial in filings in social security disability cases. This ensures that the public maintains access to the opinions (in compliance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the E-Government Act of 2002) while still protecting the privacy of non-government parties' identities within the opinion. See U.S. Jud. Conf. Comm. on Ct. Admin. and Case Mgmt., Privacy Concern Regarding Social Security and Immigration Opinions, May 1, 2018 (memorandum).

[2] 42 U.S.C. §§ 401–33.

## I. PLAINTIFF'S MEDICAL CONDITION

Plaintiff was born in 1969[3] and has a high school education. (ECF 11-1 at 31)[4]. Plaintiff suffers from fibromyalgia, hypertension, diabetes mellitus type two, osteoarthritis, and bilateral rheumatoid arthritis of the hands. (*Id.* at 25). Plaintiff also has bone spurs and calcifications all over her body. (*Id.*). This causes difficulty walking, standing, lifting heavy objects and using her hands. (*Id.*). Plaintiff alleges that she could walk for about twenty feet and stand for less than five minutes, that she had extreme difficulty making a fist and could only carry light objects. (*Id.* at 27). Plaintiff also alleges that this impaired her mood, sleep, and caused anxiety, as well as necessitating assistance from her husband and daughter with personal care. (*Id.*) Medical examinations confirm reduced range of motion with her cervical, thoracic, and lumbosacral spine with tenderness. (*Id.* at 28). Plaintiff maintains that these conditions rendered her unable to work beginning on April 1, 2022. (*Id.* at 23, 175, 220).

## II. PROCEDURAL BACKGROUND

Plaintiff filed the disputed application for disability benefits on April 14, 2022. (ECF 11-1 at 23, 175–81, 219–24). Plaintiff's claim was denied initially and upon reconsideration. (*Id.* at 23). On March 12, 2025, ALJ Sherrill Carvalho held a telephonic hearing, at which a vocational expert and Plaintiff, represented by counsel, both testified. (*Id.*; *see id.* at 39–72 (transcript)). The ALJ found that Plaintiff was not disabled during the period covered by her application. (*Id.* at 20–22, 32).

Plaintiff appealed this decision to the Social Security Administration Appeals Council, which rejected Plaintiff's appeal on February 18, 2026, making the ALJ's decision the final

---

[3] Unless otherwise specified, facts in this section are taken from the factual findings of the ALJ, which, as further explained below, must be affirmed if they are supported by any substantial evidence.

[4] All pin cites for CM/ECF documents refer to the CM/ECF pagination generated at the top of the page.

decision of the Commissioner. (*Id.* at 13–19; 7–9); *see* 42 U.S.C. §§ 405(g), 1383(c)(3) (establishing the subject matter jurisdiction of United States District Courts to review final decisions of the Commissioner) *and Kneeland v. Berryhill*, 850 F.3d 749, 755 (5th Cir. 2017) (confirming that the Appeals Council declining to review an ALJ decision establishes that ALJ decision as final). Plaintiff filed the instant action on April 15, 2026. (ECF 1).

## III. APPLICABLE LAW

A person may qualify for disability insurance benefits under the Act if they are disabled. 42 U.S.C. § 423(a)(1). A person is disabled according to the terms of the Act if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1)(A), 423(d)(1)(A). "'Substantial gainful activity' is defined as a work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002); *accord* 20 C.F.R. § 404.1572(a)–(b).[5]

ALJs use a standardized framework to determine whether an applicant is disabled under the Act:

> In evaluating a disability claim, the [ALJ] conducts a five step sequential analysis to determine whether (1) the [plaintiff] is presently working; (2) the [plaintiff] has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the [plaintiff] from doing past relevant work; and (5) the impairment prevents the [plaintiff] from doing any other substantial gainful activity.

[5] The Social Security Administration has the authority to promulgate regulations implementing the Act under 42 U.S.C. § 405(a). In addition to traditional notice-and-comment regulations issued according to the Administrative Procedure Act, 5 U.S.C. § 553(b)–(c), the Social Security Administration also publishes precedential rulings and statements of policy or interpretation known as Social Security Rulings (each an "SSR"). 20 C.F.R. § 402.160(b)(1) (effective January 17, 2025; previously codified at 20 C.F.R. § 402.35).

*Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007). Before proceeding to steps four and five, the ALJ must assess a claimant's residual functional capacity ("RFC"). *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). RFC is defined as "the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

The plaintiff bears the burden of proof in establishing a disability through the first four steps of the analysis; at the fifth step, the burden shifts to the ALJ and the Social Security Administration to show that there is other substantial work in the national economy that the plaintiff can perform. *Audler*, 501 F.3d at 448; *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014). A finding that the plaintiff is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Copeland*, 771 F.3d at 923 (citing *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)); *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987) (citing *Barajas v. Heckler*, 738 F.2d 641, 643 (5th Cir. 1984) (per curiam)).

## IV. THE ALJ'S FINDINGS

In concluding that Plaintiff was not disabled, the ALJ found that Plaintiff's work history made her eligible for coverage through December 31, 2027 (Plaintiff's "date last insured"). (ECF 11-1 at 25).

### A. STEPS ONE THROUGH THREE

At step one of the five-step process, the ALJ found that Plaintiff had not engaged in substantial gainful activity after the alleged disability onset date. (*Id.*). At step two, the ALJ found that Plaintiff had the medically determinable severe impairments of fibromyalgia, osteoarthritis, bilateral rheumatoid arthritis of the hands, migraines, diabetes mellitus type two, and hypertension. (*Id.* at 25–26). The ALJ also found that Plaintiff had impairments of depression and/or anxiety. (*Id.* at 26). The ALJ found, however, that there was insufficient objective evidence demonstrating persistent psychological abnormality and therefore classified Plaintiff's allegations of depression

and anxiety as non-medically determinable impairments.[6] (*Id.*). In considering only the medically determinable impairments, at step three, the ALJ found that they were not equivalent to any disabling impairment listed in the applicable regulations. (*Id.*).

B. <u>RESIDUAL FUNCTIONAL CAPACITY FINDING</u>

The ALJ then assessed Plaintiff as having:

> the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except [Plaintiff] can occasionally climb ramps and stairs, and never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally stoop, kneel, crouch, crawl and balance, as defined in the SCO. [Plaintiff] can frequently handle and finger with her bilateral upper extremities. The claimant should avoid direct sunlight and very loud level 5 noise.

(*Id.* at 26). In making this RFC finding, the ALJ addressed Plaintiff's alleged disability due to migraines, diabetes, hypertension, fibromyalgia, and osteoarthritis in turn. (*Id.* at 27). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of Plaintiff's self-reported symptoms, but that Plaintiff's statements concerning intensity, persistence, and limiting effects were "not entirely consistent" with the medical evidence. (*Id.*).

Regarding Plaintiff's hypertension and diabetes, the ALJ found that they were effectively controlled through medication and that there was minimal or no evidence of hypertensive or persistent hypoglycemic symptoms. (*Id.* at 27–28). The ALJ acknowledged that Plaintiff's migraines required her to stay in a dark room or take a bath but found that she was otherwise similarly managing her headaches with medication and infrequent monitoring. (*Id.* at 28). The ALJ further found no evidence that Plaintiff's headaches interfered with activities of daily living. (*Id.*). The ALJ reported that there were no observable headache signs in the medical record, such as gait

[6] Plaintiff does not challenge this finding.

instability or skin flushing, no request for a dark room during examinations, and no emergency treatment necessary. (*Id.*).

Regarding Plaintiff's fibromyalgia, osteoarthritis, and rheumatoid arthritis, the ALJ reported that Plaintiff had only recently begun treating her fibromyalgia with medication, but that collateral evidence indicated she was diagnosed with this condition at age 26, approximately thirty years earlier. (*Id.*). The ALJ noted that imaging of Plaintiffs lumbar spine revealed no evidence of degenerative disc disease or abnormality, and that imaging of the right knee showed no significant arthritic changes or evidence of osteoarthritis. (*Id.*). The ALJ further noted that this consultative exam did indicate radicular pain because Plaintiff exhibited a positive leg raise. (*Id.*). Additional imaging of Plaintiff's right hand also showed mild to moderate degenerative osteoarthritic changes. (*Id.*). The ALJ acknowledged Plaintiff's positive ANA[7] test but noted that providers found she does not fit the ACR/SLICC criteria for systemic lupus erythematosus requiring medical treatment.[8] (*Id.*).

The ALJ found that Plaintiff's physical examinations were unremarkable with some evidence of abnormal gait and other records of normal gait. (*Id.*). She noted that while examinations confirmed reduced range of motion with her cervical, thoracic, and lumbosacral spine, Plaintiff's motor strength examinations consistently revealed full strength. (*Id.* at 28–29). Despite some physical limitations, the ALJ concluded that these reductions in range of motion do not suggest inability to perform work activities at all exertional levels. (*Id.* at 29).

---

[7] ANA stands for Antinuclear Antibodies, and an ANA test is used as a starting point in diagnosing autoimmune diseases. Krasimir Kraev et al., *Comprehensive Exploration of Antinuclear Antibodies (ANAs): Unveiling Clinical Significance, Associations with Cancer, and the Nuances of Differential Diagnosis in Positive ANA Patients*, 14 DIAGNOSTICS, Feb. 1, 2024, at 3–4.

[8] The American College of Rheumatology ("ACR") and the Systemic Lupus International Collaborating Clinics ("SLICC") have developed criteria used to identify if someone has systemic lupus erythematosus. Ezgi Batu et al., *The Performances of the ACR 1997, SLICC 2012, and EULAR/ACR 2019 Classification Criteria in Pediatric Systemic Lupus Erythematosus*, 48 J. RHEUMATOLOGY 907, 907 (2021).

Regarding Plaintiff's complaints of upper extremity limitations, specifically her inability to close her fist, the ALJ reported that examinations revealed only nominal dysfunction. (*Id.*). The consultative examination revealed slightly reduced grip strength but no synovitis or swelling, and consistent ability to make a fist. (*Id.*).

The ALJ then addressed Plaintiff's subjective complaints directly. (*Id.*). Plaintiff alleged severe pain and extremely limiting symptoms. (*Id.*). The ALJ noted, however, that Plaintiff reported less limiting symptom severity at times. (*Id.*). This suggested to the ALJ that Plaintiff's conditions wax and wane, indicating less overall limiting symptom severity. (*Id.*). The ALJ also found it significant that Plaintiff has not completed physical therapy, undergone pain management procedures, nor had any surgical intervention. (*Id.*). Further, the ALJ noted that Plaintiff does not require the use of a cane, that her lab work did not support a diagnosis of inflammatory arthritis, and that the medical suggestion from her providers was to treat with preventative medications and lifestyle modifications. (*Id.*).

Lastly, the ALJ addressed Plaintiff's allegations of mental health symptoms. (*Id.*). She found that because Plaintiff was not receiving regular or emergency psychiatric treatment—and her provider indicated normal appearance, mood, and behavior—the record did not support including any non-exertional limitations to Plaintiff's residual functional capacity. (*Id.*).

C. <u>STEP FOUR – ABILITY TO PERFORM PAST WORK</u>

At step four, the ALJ found that Plaintiff can perform her past relevant work because her work activities were not precluded by Plaintiff's RFC. (*Id.* at 31). The ALJ noted Plaintiff's testimony that—as the owner of a dog grooming business—she worked sitting at a desk, doing paperwork and payroll, and greeted customers. (*Id.*). The vocational expert classified this past work as a composite job consisting of a combination of DOT occupations including payroll clerk

and receptionist. (*Id.*). The vocational expert further testified that, based on Plaintiff's residual functional capacity, she could perform this composite job, and the ALJ agreed.

D. STEP FIVE – ALTERNATE WORK

At step five, the ALJ found that, in the alternative to her past work, Plaintiff's age, education, work experience, and RFC were such that certain jobs existed in significant numbers in the national economy that Plaintiff could also perform. (*Id.*). Specifically, the vocational expert identified three such jobs: order clerk, insurance clerk, and appointment clerk. (*Id.* at 32). Accordingly, the ALJ found Plaintiff is not disabled. (*Id.* at 33).

## V. STANDARD OF REVIEW

When reviewing disability determinations made by the Commissioner, a court is "limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). These limitations are imposed by statute:

> The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . and where a claim has been denied by the Commissioner . . ., the Court shall review only the question of conformity with [Agency] regulations and the validity of such regulations.

42 U.S.C. § 405(g). If the ALJ fails to apply the proper legal standard, a denial must be remanded and reconsidered. *Moore v. Sullivan*, 895 F.2d 1065, 1070 (5th Cir. 1990). If the ALJ applies the proper standards, however, and relies on any substantial evidence, the decision must be upheld. *Id.*

"Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion and constitutes more than a mere scintilla but less than a preponderance of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (cleaned up). "It must do more than create a suspicion of the existence of the fact to be established[.]" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). The reviewing court may not reweigh evidence or substitute its own

judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Hardman*, 820 F.3d at 151. Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977).

Even a decision unsupported by substantial evidence will not always be vacated or reversed. An error is harmless and will not result in remand "when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021).[9] In short, a decision denying Social Security disability benefits is entitled to great deference and will only be overruled if the correct legal standards were not applied, or if the decision turned on a conclusion for which there was no substantial evidence.

## VI. ANALYSIS

Plaintiff makes three arguments that the ALJ's RFC finding is not supported by substantial evidence. (ECF 12 at 4–10). First, that the ALJ erred by rejecting medical opinion evidence and then deciding Plaintiff's RFC based on the ALJ's own lay judgment. (*Id.* at 5–6). Second, that the ALJ committed a *Ripley*[10] error by failing to seek an additional medical opinion translating Plaintiff's medical data. (*Id.* at 6). Finally, that the ALJ failed to acknowledge Plaintiff's subjective complaints. (*Id.* at 6–8). The undersigned will now address each argument in turn.

### A. ALJ Evaluation of Medical Opinions

Plaintiff argues that the ALJ rejected medical opinion evidence and substituted her own lay interpretation in crafting her RFC finding. (ECF 12 at 6). Plaintiff points out that her record

[9] Failure to apply the correct legal standard can also be a harmless error; *Keel* itself upheld the harmless application of an erroneous step-two "severity" standard. *Keel*, 986 F.3d at 555–56. However, because an "ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision[,]" a failure to apply the correct legal standard can only be sustained as a harmless error if sufficient reasoning is articulated in his decision to support it under the legal standard that he failed to apply. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000).

[10] *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995).

contained two consultants' medical opinions addressing her physical capacity, both agreeing she could perform light work with frequent climbing. (*Id.*). Her argument is that the ALJ discounted these opinions because they had not seen later-submitted evidence and then "imposed restrictions more restrictive than those opinions." (*Id.*). She asserts this contributed to an RFC unsupported by substantial evidence because the resulting RFC rested solely on the ALJ's lay interpretation of medical data. (*Id.*). The Court disagrees.

An ALJ is required to articulate how they considered medical opinions using two factors—supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). The ALJ is allowed to evaluate medical opinions using other factors than these but must include these two explicitly when issuing a decision. *Id.*; *see also id.* at §§ 404.1520c(c)(1)–(5), 416.920c(c)(1)–(5) (listing examples of other permissible factors).

The more supportable and consistent a medical opinion is, the more persuasive weight the ALJ is required to give it. *Id.* at §§ 404.1520c(c)(1)–(2), 416.920c(c)(1)–(2). The regulations define "supportability" as a measure of how "relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[.]" *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" is defined as a measure of how "consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2). "ALJs are no longer required to give controlling weight to a treating physician's opinion." *Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021). An ALJ must only "articulate how persuasive he or she finds medical opinions and prior administrative medical findings in the record" while considering "most importantly, supportability and consistency." *Thompson v. Soc. Sec. Admin.*, 2024 WL 1886757, at *2 (5th Cir. Apr. 30, 2024) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

Here, the ALJ directly addressed the two medical opinions and considered both their supportability and their consistency. (ECF 11-1 at 30). Regarding supportability, the ALJ explained that any ordinary deference afforded these assessments is diminished by the fact that they did not have an opportunity to directly examine Plaintiff or to review evidence received after their file reviews were complete. (*Id.*). The ALJ further considered both opinions' consistency when she explained that—despite the lack of more recent evidence review—their findings are consistent with the other evidence in the record. (*Id.*). Having discussed both opinions' supportability and consistency, the ALJ applied the correct legal analysis.

While "[a]n ALJ usually cannot reject a medical opinion without some explanation," that is not what this ALJ did. *Webster*, 19 F.4th at 718. Instead, she adopted a *more restrictive* RFC—that is, one more favorable to Plaintiff—than that suggested by these two medical opinions. The ALJ did so out of "great deference to [Plaintiff's] allegations." (ECF 11-1 at 30). She did not reject the medical opinions but rather found them "persuasive" given their consistency with other medical evidence. (*Id.*). The Court, therefore, disagrees with Plaintiff's argument that the ALJ rejected the medical opinions.

Even if the ALJ's more restrictive RFC were an error, Plaintiff has failed to demonstrate how it would be a prejudicial error.[11] Plaintiff argues that another medical source "could have limited her to no more than occasional bilateral handling on a regular and continuing basis."[12] (ECF 12 at 9). Plaintiff again mistakenly characterizes the ALJ's discussion of the two medical opinions as a rejection. Here, the ALJ in fact credits them as persuasive and imposes an even more restrictive RFC than they prescribed. Plaintiff does not explain, and the Court struggles to find,

[11] *See Keel*, 986 F.3d at 556 (explaining that a harmless error will not result in remand).

[12] This argument is further addressed in subsequent sections.

how this could be prejudicial to Plaintiff. Therefore, in the alternative, even if this had been an error, Plaintiff was not prejudiced, and the Court finds that the ALJ did not err in her analysis of the medical opinions.

B. ALJ's Duty to Develop the Record

Plaintiff next argues that the ALJ's failure to seek additional medical opinions constituted a *Ripley* error. (ECF 12 at 6). She maintains that the consultants' reviews were never translated into functional terms, resulting in an RFC based on the ALJ's own lay interpretation of medical data. (*Id.*). The Court disagrees.

"Medical opinion" has a technical meaning in this context; "[a] medical opinion is a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in" performing physical, mental and other demands of work, or in adapting to environmental conditions. 20 C.F.R. § 404.1513(a)(2)(i)–(iii); *accord Ripley*, 67 F.3d at 557 (discussing "a medical source statement describing the types of work that the applicant is still capable of performing"). The law does not even require that the record contain any medical opinions in the first place. *Ripley*, 67 F.3d at 557 ("The absence of such a statement, however, does not, in itself, make the record incomplete."); *accord Gutierrez v. Barnhart*, 2005 WL 1994289, *7–8, (5th Cir. 2005). If no medical opinion is provided, the inquiry of a reviewing court "focuses on whether the decision of the ALJ is supported by substantial evidence in the existing record." *Ripley*, 67 F.3d at 557. Notably, the substantial evidence needed is not purely medical evidence but is rather evidence that can compensate for the absence of a medical opinion—i.e., evidence of the work-related functions a claimant can still perform despite their limitations.

Here, the ALJ supported her RFC finding with substantial evidence because she weighed both medical data and medical opinions in crafting her RFC. Plaintiff maintains, though, that "no

physician translated [Plaintiff's] raw medical findings into functional terms after the consultants' review, [thus] the resulting RFC finding rests solely on the ALJ's lay interpretation of the medical data." (ECF 12 at 6). Plaintiff, again, misstates the record by characterizing the ALJ's analysis of the medical opinions as a rejection. On March 14, 2023, Stephen Gerrish, M.D., opined that Plaintiff was capable of light work. (ECF 11-1 at 74–79). Upon reconsideration, on June 8, 2024, Jeanine Kwun M.D., reaffirmed. (*Id.* at 81–86). The ALJ discussed and evaluated these opinions, ultimately finding them consistent with other data in the record. (*Id.* at 30).

In *Ripley*, there was no medical opinion, and while the court made clear that one is not explicitly necessary, there was also no evidence regarding Ripley's ability to work aside from his own testimony.[13] Here, there existed affirmative medical opinions of Plaintiff's ability to work despite her symptoms. The ALJ did not reject these opinions. Rather, she weighed their supportability and consistency, in light of all other medical evidence, and credited them as persuasive. (*Id.* at 30). The ALJ's RFC was not "built after [she] rejected every opinion in the file," as Plaintiff argues. (ECF 17 at 3). In fact, the ALJ's RFC was built in consideration of and largely in agreement with the two medical opinions in the file—deviating from them only *in Plaintiff's favor*.

Plaintiff continues that if another medical expert had reviewed her hand and finger pathology, they could have limited her to no more than occasional bilateral handling. (ECF 17 at 8). Plaintiff points to vocational expert testimony establishing that an RFC limitation of only *occasional* bilateral handling would render her unable to perform her past or other work. (*Id.*). She argues then that the ALJ's failure to obtain additional medical data properly considering her hand restrictions was a prejudicial error. (*Id.*). This argument also misstates the record.

[13] *Ripley v. Chater*, 67 F.3d 552, 557–58 (5th Cir. 1995).

The medical opinion evidence did evaluate Plaintiff's hand and finger limitations. (ECF 11-1 at 76–77). Specifically, Dr. Stephen Gerrish opined that Plaintiff had lifting restrictions but could otherwise push and/or pull in upper extremities in an unlimited amount. (*Id.*). This opinion considered Plaintiff's reports of hand pain. Dr. Gerrish included additional explanation of his finding, stating that Plaintiff "is able to care for pets," "has trouble with zippers and buttons," "showers daily but can not hold [a hair] dryer," "is able to do household chores," "[and] is able to go out alone and can drive[.]" (*Id.* at 77). Dr. Jeanine Kwun also considered Plaintiff's reports of "[j]oint pain in [bilateral] hands, knees, and feet with swelling" and concurred with Dr. Gerrish's finding that Plaintiff could perform light exertion with climbing limitations. (*Id.* at 82–86). These medical opinions, therefore, properly accounted for Plaintiff's bilateral hand pain.

The medical record contained ample medical data, two medical opinions, and subjective reports. The ALJ considered, weighed, and credited this evidence. Having not found the medical opinions to be inconsistent, even in light of later reviewed medical data, the ALJ had no duty to obtain additional medical opinions regarding Plaintiff's ability to work. The record was fully developed, and no *Ripley* error occurred.

C. Claimant's Symptoms

Plaintiff's final argument is that the ALJ ignored her subjective complaints in crafting the RFC finding. (ECF 12 at 6–8). Plaintiff specifically points to her reporting bilateral hand pain in early May 2024 rated 8/10, finger pain, soreness, and restricted mobility. (*Id.* at 7). She argues that the ALJ discussed only Plaintiff's lower pain ratings while ignoring higher ratings. (*Id.*). Her alleged higher pain ratings largely come from subjective complaints during chiropractic sessions from early May to mid-December 2024.

The Social Security Administration has established a two-step test for evaluating a claimant's own descriptions or statements of their impairments.[14] SSR 16-3p, 2017 WL 5180304, *3; *accord* 20 C.F.R. § 404.1529; *see also Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003) (per curiam) ("The ALJ must consider subjective evidence of pain, but it is within his discretion to determine the pain's disabling nature.") (quoting *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991)).

The first step requires the ALJ to determine whether the claimant's medically determinable impairments could reasonably be expected to produce the claimant's symptoms. SSR 16-3p, 2017 WL 5180304, at *3. The second step is for the ALJ to evaluate the intensity and persistence of a claimant's symptoms, and it requires the ALJ to determine "whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." SSR 16-3p, 2017 WL 5180304, at *5. If the claimant's statements about their impairments are inconsistent with the objective medical and other evidence, the ALJ will find the claimant's symptoms less likely to be disabling. *Id.* at *8; *accord* 20 C.F.R. § 404.1529(c)(4).

Here, the ALJ properly applied this legal test. The ALJ first determined that Plaintiff's medically determinable impairments could reasonably be expected to cause some of her symptoms. (ECF 11-1 at 27). At the second step she found, however, that Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not entirely consistent with the medical evidence. (*Id.*). The ALJ meticulously went through each of Plaintiff's medically determinable impairments and the alleged symptoms resulting from them.

---

[14] *See* 20 C.F.R. § 404.1502(i) (defining "symptoms" as "your own description of your physical or mental impairment.").

Regarding the allegation of daily migraines, despite the lack of observable headache signs, the ALJ deferred to plaintiff's subjective complaints and included limitations on the level of light and noise intensity. (*Id.* at 28–30). Regarding Plaintiff's chief complaint, severe pain in her upper extremities, the ALJ found that the record did not support Plaintiff's alleged level of severity. (*Id.* at 29). The ALJ points to the fact that Plaintiff demonstrated no problems with pinching, grasping, shaking, writing, or manipulating objects, and that examinations reveal no synovitis, swelling, or lack of ability to make a fist. (*Id.*). The ALJ also acknowledged Plaintiff's complaint that her pain interferes with her daily living, even though she reported being active in her garden. (*Id.*).

Plaintiff's core argument then is that the ALJ ignored Plaintiff's higher pain reports to her chiropractor in early May through mid-December 2024. (ECF 12 at 7) (citing ECF 11-2 at 65–95, 197–201). The ALJ did acknowledge that plaintiff was managing her condition through chiropractic treatment, though. (ECF 11-1 at 29). The ALJ pointed out that despite Plaintiff's reports to her chiropractor, Plaintiff had not completed physical therapy or undergone any pain management procedures and has not had any surgical intervention. (*Id.*). The ALJ found this significant. (*Id.*).

While the ALJ did not discuss each and every subjective complaint contained in Plaintiff's chiropractic visits, the law does not require her to have done so. An "ALJ is not required to discuss every piece of evidence in the record." *Hunt v. Astrue*, 2013 WL 2392880, at *7 (N.D. Tex. June 3, 2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)). Further, it is not within the court's appellate jurisdiction to weigh Plaintiff's subjective complaints against the medical record. Conflicts in the evidence are resolved by the Commissioner, not the courts. *Laffoon*, 558 F.2d at 254. Here the ALJ did precisely what the law requires. She evaluated "whether [Plaintiff's] statements about the intensity, persistence, and limiting effects of [her] symptoms are consistent with the [medical evidence]" and concluded that, at least as to severity, they were not.

*See* SSR 16-3p, 2017 WL 5180304, at *5. The Court finds that this determination was supported by substantial evidence.

## VII. CONCLUSION

In summary, Plaintiff has not shown that the ALJ's decision applied the incorrect legal standard or was not supported by substantial evidence. Therefore, the decision of the Commissioner is AFFIRMED. Judgment will be entered accordingly.

IT IS SO ORDERED.

ENTERED September 23, 2026.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE